

# SUPREME COURT OF MISSOURI
# en banc

MACON COUNTY EMERGENCY SERVICES )
BOARD, )
                                    )
           Appellant, )
                                    )
v. )       No. SC95003
                                    )
MACON COUNTY COMMISSION, ALAN )
WYATT, IN HIS OFFICIAL CAPACTIY AS A )
MACON COUNTY COMMISSIONER, DREW )
BELT, IN HIS OFFICIAL CAPACITY AS A )
MACON COUNTY COMMISSIONER, AND )
JON DWIGGINS, IN HIS OFFICIAL CAPACITY )
AS A MACON COUNTY COMMISSIONER, )
                                    )
           Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF MACON COUNTY
The Honorable Frederick Tucker, Judge

*Opinion issued April 5, 2016*

The Macon County Emergency Services Board filed a petition for declaratory judgment in the Macon County Circuit Court seeking a judgment that it was entitled to a proportional share of the county's use tax revenue equal to the share that it was already receiving of the county's sales tax revenue. The circuit court denied the request, and this

appeal follows.  Because section 144.757[1] does not direct third-class counties as to the disbursement of county use tax revenue, it is within the discretion of the Macon County Commission whether to share that revenue with the emergency services board.  The judgment of the circuit court is affirmed.

## Factual & Procedural Background

Plaintiff is the Macon County Emergency Services Board (Board),[2] a body corporate and a political subdivision under section 190.339.2.  Its purpose is to manage emergency telephone services in Macon County.  Section 190.339.  Defendant is the Macon County Commission (Commission).[3]  Macon County is a third-class county and is governed by Commission.  Section 48.020.

Board's duties include "[r]eceiving money from any county sales tax authorized to be levied pursuant to section 190.335 and authorizing disbursements from such moneys collected."  Section 190.339.1.  Board has no taxing power of its own but relies on Commission to authorize a permissible county sales tax rate for Board's benefit.  Section 190.335.1.  When such a sales tax is proposed to voters, the proposal must use language substantially similar to the model ballot language found in section 190.335.3, which indicates that the revenue levied will be used for various emergency services.

---

[1] All statutory references are to RSMo Supp. 2013 unless otherwise indicated.
[2] The members of Board are also parties in their official capacities.  For purposes of this appeal, both Board and its members will be referred to collectively as "Board."
[3] The commissioners are also parties in their official capacities.  Again, for purposes of this appeal, both Commission and the commissioners will be referred to collectively as "Commission."

Prior to 1992, the total Macon County sales tax rate was 1 percent. Initially on the 1992 ballot (and then renewed on a continuing basis on the 1994 ballot), Commission proposed an additional 0.375 percent sales tax, pursuant to section 190.335, to fund Board. This raised Macon County's total sales tax rate to 1.375 percent. Macon County voters approved the proposal, and Board received the revenue generated from this additional 0.375 percent sales tax every year following the proposal's adoption.

In 2012, Commission proposed a county use tax as permitted under section 144.757.[4] The proposal called for a use tax rate of 1 percent. Though the 1 percent proposed use tax was below Macon County's *total* sales tax rate of 1.375 percent, Board took no action opposing the proposal. Board had been advised by an employee of the Missouri Department of Revenue (Department) that, should the use tax be approved, Board would automatically receive a proportional share of the proceeds by virtue of its authorized sales tax share.[5] Macon County voters approved the use tax.

Department began collecting the use tax and distributing its revenue directly to Commission, as there were no other applicable disbursement directions in section 144.759.1. From the date the use tax was approved through September 2014, Department collected $121,548.70. Board requested Commission to distribute to it a share of the use

---

[4] A use tax is imposed on the storage, use, or consumption of tangible personal property in the state. Section 144.610. A use tax does not apply if the purchase is from a Missouri retailer and is subject to Missouri sales tax. Section 144.615. The purpose of the use tax is to complement and protect sales taxes by removing the incentive to purchase from out-of-state sellers in order to avoid local sales taxes. *Kirkwood Glass Co. v. Dir. of Revenue*, 166 S.W.3d 583, 585 (Mo. banc 2005).

[5] Department's website also states that "local use taxes are distributed in the same manner as sales taxes."

tax equal to the share of the sales tax it received, but Commission refused to do so.

Board filed a petition for a declaratory judgment in the circuit court, seeking

determination of its rights under section 144.757 to receive a portion of the use tax. The

circuit court denied Board's request to declare that Board should receive a proportional

share of the use tax from the Commission. The court found that, because section 144.757

did not require the ballot question to instruct the voters as to the disbursement of the use

tax revenue and because there was no other guidance in the statute as to such

disbursement in third-class counties, it was within Commission's discretion to manage

that revenue. Board appeals.[6]

## Standard of Review

The resolution of this case depends on the interpretation of section 144.757 and its

relation to section 190.335. Legal questions of statutory interpretation are reviewed *de

novo*. *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 564 (Mo. banc 2010). In matters of

statutory interpretation, this Court's role is to ascertain the intent of the legislature from

the language used and to consider the words used in their ordinary meaning. *Turner v.

Sch. Dist. of Clayton*, 318 S.W.3d 660, 665 (Mo. banc 2010). It is presumed that each

word, clause, sentence, and section of a statute will be given meaning and that the

legislature did not insert superfluous language. *Farish v. Missouri Dep't. of Corr.*, 416

S.W.3d 793, 797 (Mo. banc 2013). This Court will not add words to a statute under the

---

[6] This Court has exclusive jurisdiction of the appeal. MO. CONST. art. V. sec. 3.

auspice of statutory construction. *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94

S.W.3d 388, 390 (Mo. banc 2002).

## Analysis

The issue in this case is whether Board should be receiving the same proportional

share of the county use tax revenue as it does of the county sales tax. Board

acknowledges that section 144.757, which authorized the use tax at issue here, contains

no distribution scheme for use tax revenue applicable to third-class counties such as

Macon County.

Board is correct that section 144.757 is silent on the distribution of county use tax

revenue in third-class counties. Section 144.757.1 provides that

> [a]ny county or municipality, except municipalities within a county having
> a charter form of government with a population in excess of nine hundred
> thousand, may, by a majority vote of its governing body, impose a local use
> tax if a local sales tax is imposed as defined in section 32.085 at a rate
> equal to the rate of the local sales tax in effect in such county or
> municipality . . . .

Section 144.757.2(1) states the model ballot language applicable to such counties:

> Shall the .......... (county or municipality's name) impose a local use tax at
> the same rate as the total local sales tax rate, currently .......... (insert
> percent), provided that if the local sales tax rate is reduced or raised by
> voter approval, the local use tax rate shall also be reduced or raised by the
> same action?[7]

---

[7] The ballot language submitted by Commission to the voters substantially tracked this language.

These provisions of section 144.757, applicable to third-class counties, do not require use tax revenue to be distributed in any particular manner, much less in the same proportion as sales tax revenue.

As the circuit court correctly noted, the legislature clearly understood how to include specific distribution directions for use tax revenue, as this is precisely what it did in the provisions of section 144.757 applicable to the other political subdivisions covered by the statute.[8] Because the legislature regrettably chose not to do so in the language applicable to third-class counties, and bearing in mind the rule of statutory construction that the legislature intends each word, clause, sentence, and section of a statute to be given effect, it appears that the legislature's intent was not to mandate a specific distribution of use tax revenue in third-class counties. *See Farish*, 416 S.W.3d at 797. This Court cannot add language to the statute that does not exist. As a result, absent any specific statutory direction as to distribution of the local use tax revenue in third-class counties, it was within the discretion of Commission to share with Board a proportion of that revenue.

_____

[8] Under section 144.757.1, *municipalities* within a county having a charter form of government with a population in excess of 900,000 may adopt a use tax, provided that they select one of the distribution options permitted in section 94.890. The result of this disbursement direction is that use tax revenue for these municipalities is applied to capital improvements. Section 94.890.1. Similarly, section 144.757 also provides disbursement direction for *counties* having a charter form of government with a population in excess of 900,000 that choose to adopt use taxes. For these subdivisions, 50 percent of the revenue is used for improving and enhancing public safety, park improvements, and job creation, and 50 percent is used for enhancing local government services. Section 144.757.2(2)(a).

Regardless of a lack of statutory direction, Board contends that unless it receives a share of the county use tax equal to the amount it receives of the county sales tax, the purpose of the use tax – to protect the sales tax by removing the incentive to purchase from out-of-state sellers to avoid the sales tax – is defeated.

By having a county use tax rate of 0.375 percent less than the sales tax rate, the use tax may not fully protect the sales tax. Whether this is permissible is not properly before this Court.[9] This claim would have had to have been brought in a ballot challenge within 30 days after the result of the use tax election was announced by the secretary of state. *See* section 115.557, RSMo 2000. Such a challenge would now be out of time.

## Conclusion

Without statutory direction in section 144.757 or without any indication of legislative intent mandating that Board receive a share of the county use tax proportionate to its share of the county sales tax, this Court cannot create such a requirement. The judgment of the circuit court is affirmed.

_____
Mary R. Russell, Judge

All concur.

---

[9] Board posits that use taxes authorized by section 144.757 are designed to be *equal* to their corresponding sales taxes. That argument is not at issue in this case, and this Court offers no comment on it other than to note that *Kirkwood Glass Co.*, 166 S.W.3d at 589, previously held that "[s]o long as . . . an item purchased from an out-of-state vendor will never be taxed at a higher tax than would be charged had the item been purchased from a vendor in that locality, there is no undue burden on interstate commerce."