

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| BRUCE KRYSL, | ) | ED107591 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | 13-104992 |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF THE SECOND | ) | |
| INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: October 1, 2019 |

## <u>OPINION</u>

Bruce Krysl ("Krysl") appeals the decision of the Labor and Industrial Relations

Commission ("the Commission") denying compensation. We reverse and remand.

## BACKGROUND

In 1994, Krysl was employed as a sculptor for the Veiled Prophets of St. Louis ("VP"),

carving large characters for parade floats. Krysl's job required him to perform repetitive strokes

while sculpting the characters. In 2012, Krysl was diagnosed with diabetes, requiring treatment

for peripheral neuropathy in his upper and lower extremities, among other symptoms resulting

from his diabetes. In 2013, he began to experience numbness and tingling in his right hand while

sculpting and was ultimately diagnosed with severe right carpal tunnel syndrome. The parties

stipulated his primary compensable occupational injury occurred on January 1, 2013.  Krysl underwent surgery for carpal tunnel release and was released to full duty in 2015.

Krysl filed a claim for compensation on July 5, 2016.  He settled his primary injury claim against VP in May 2017, leaving the claim against the Second Injury Fund ("the Fund").  Krysl's claim against the Fund was heard by the administrative law judge ("ALJ") in February 2018. The ALJ awarded Krysl permanent partial disability.  The Fund filed an application for review. The Commission reversed the ALJ's award, finding that even though the primary occupational injury occurred on January 1, 2013, Section 287.220.3(1) RSMo (2016)[1] applied and precluded his claim for permanent partial disability against the Fund because Krysl filed his claim after January 1, 2014.

## DISCUSSION

In each of his two points on appeal, Krysl contends the Commission erroneously interpreted Section 287.220 in denying his claim for compensation against the Fund.  In both points, Krysl's argument centers upon the fact that the parties stipulated his occupational injury occurred January 1, 2013.  Thus, his claim, which was filed after January 1, 2014, did not preclude a claim against the Fund because the date of his injury was determinative.

### *Standard of Review*

We review the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record."  *Cosby v. Treasurer of State as Custodian of Second Injury Fund*, 2019 WL 2588575 *2, quoting Article V, section 18 of the

---

[1] All further statutory references are to RSMo (2016).

Missouri Constitution. In addition, Section 287.495.1 states, in relevant part, that we shall only review questions of law and we may modify, reverse, remand or set aside the award only upon the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We review questions of law *de novo*. *Cosby*, at *2.

<u>*Analysis*</u>

Each of Krysl's two points on appeal contend the Commission erroneously interpreted Section 287.220 in denying his claim for compensation against the Fund because the parties stipulated his occupational injury occurred January 1, 2013. Krysl argues the plain language of Section 287.220 compensates all injuries occurring prior to January 1, 2014, even though his claim was filed after that date. We agree.

The Commission found that because Krysl's claim was filed after January 1, 2014, Section 287.220.3 precludes his claim for permanent partial disability ("PPD") against the Fund. This interpretation ignores the plain language of the statute and creates an unnecessary conflict within Section 287.220. Of greater concern, it also requires an impermissible addition of terms to arrive at the result. *See Macon Co. Emergency Services Board v. Macon Co. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016) ("This Court will not add words to a statute under the auspice of statutory construction.").

3

When interpreting statutes, we must ascertain the legislature's intent by considering the plain and ordinary meaning of the terms used and give effect to that intent where possible. *Cosby v. Treasurer of State as Custodian of Second Injury Fund*, 2019 WL2588575 *3. We consider the words in context and we must construe sections of statutes *in pari materia* to determine the meaning and scope of the language. *Id*.

Section 287.220 governs the compensation and payment of claims and was amended in 2013 to limit claims against the Fund effective January 1, 2014. Section 287.220.2 unequivocally allows compensation for claims filed against the Fund in, "*[a]ll cases* of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014. . . ." (emphasis added). The language in Section 287.220.3(1) specifically limits Fund liability for "*[a]ll claims* against the second injury fund *for injuries* occurring after January 1, 2014, and *all claims* against the second injury fund involving a *subsequent compensable injury which is an occupational disease* filed after January 1, 2014." (emphasis added).

It is the distinction between accidental injury and occupational disease that is crucial to the interpretation of Section 287.220. Unlike an accidental injury, occupational diseases accrue over time. An occupational disease does not become a compensable injury until it causes the employee to become disabled, meaning it affects the employee's ability to perform ordinary tasks and harms his earning ability. *See Garrone v. Treasurer of State of Missouri*, 157 S.W.3d 237, 242 (Mo. App. E.D. 2004) (internal citations omitted). An employee can experience significant symptoms of an occupational disease well before it becomes a compensable injury. *Id*. In fact, an employee could even be substantially treated for an occupational disease but unless it becomes disabling prior to January 1, 2014, Subsection 287.220.3(1) precludes Fund

4

liability.

The plain terms of Section 287.220.3(1) exclude "*[a]ll cases* of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014. . . ." (emphasis added).  It does not distinguish between accidental injuries and occupational disease.

However, the legislature then specifically uses the term "subsequent compensable injury" in its limitation of Fund liability for occupational disease in Section 287.220.3(1).  *See Macon Co. Emergency Services Board*, 485 S.W.3d at 355 ("It is presumed that each word, clause, sentence and section of a statute will be given meaning and that the legislature did not insert superfluous language.").  Thus when considering occupational disease, these two phrases, in conjunction with the term "all cases" in subsection 2 clearly indicates the legislature's intent to include compensable occupational diseases occurring prior to January 1, 2014, which by their very nature could result in a claim filed after January 1, 2014.[23]  Thus, all claims for any existing injuries due to occupational disease that were not a disabling "subsequent compensable injury" before January 1, 2014, are barred.  The plain language of subsection 3(1) simply, if less than artfully, limits the Fund's liability for all claims for any injuries, both accidental and occupational, which occurred after January 1, 2014.[4]

---

[2] The Missouri Supreme Court's recent decision in *Cosby* supports this interpretation.  Although the injury at issue in *Cosby* was accidental, the Court's holding regarding the applicability of Section 287.220.3 to preclude claims against the Fund for PPD did not rest on the nature of the injury.  Instead, the Court focused solely upon the date of the injury, holding if the injury causing PPD and the subsequent compensable injury occurred prior to January 1,

[3] , Section 287.220.2 governs the Fund's liability.  *Id*. at *4.

[4] As in Krysl's case, this interpretation only applies to a narrow group of individuals affected by this conflict who sustained a compensable injury prior to, but filed claims after, January 1, 2014, for such occupational disease.

5

Moreover, and of greater concern, the Commission's conclusion effectively inserts the terms "*except for occupational disease*" in subsection 2 and *"regardless of the date of injury"* into Section 287.220.3(1) which neither the Commission nor this court can do. *See Macon Co. Emergency Services Board*, 485 S.W.3d at 355. Not only does the Commission's interpretation ignore the use of "subsequent compensable injury" by the legislature and but also requires the addition of words not contained in the statute.[5] This contradicts the basic rules of statutory interpretation and our primary function to ascertain legislative intent from the language used in the statute. *Anderson ex rel. Anderson*, 248 S.W.3d at 106.

All parties unequivocally stipulated Krysl's occupational disease occurred on or about January 1, 2013. Thus, based upon the plain language of Section 287.220, the Fund's liability in this case should be governed by Section 287.220.2. Although Krysl filed his claim for injury due to occupational disease after January 1, 2014, he sustained a compensable injury prior to this date resulting in his PPD. Therefore, his claim against the Fund was not precluded by Section 287.220.3, and the Commission erred in denying benefits on this basis.

## CONCLUSION

The judgment of the Commission is reversed and remanded with instructions to reinstate the ALJ's award of permanent partial disability benefits.

_____
Lisa P. Page, Judge

Philip M. Hess, P.J., concurs.

---

[5] The Commission's interpretation also impacts the substantive rights of claimants which would be improperly applied to claims retrospectively. *See Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 768 (Mo. banc

Kurt S. Odenwald, J., concurs in separate concurring opinion.

2007) (Missouri Constitution prohibits laws that are retrospective in operation which is one that takes away or impairs vested or substantial rights acquired under existing law or imposes new obligations or duties with respect to past transactions).  Our interpretation gives effect to the plain language of the statute, complies with the legislative intent to limit Fund liability for all injuries after January 1, 2014, and avoids this *ex post facto* application of the amended statute.

7



# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

BRUCE KRYSL, ) ED107591
)
    Appellant, ) Appeal from the Labor and
) Industrial Relations Commission
v. ) 13-104992
)
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND )
INJURY FUND, )
)
    Respondent. ) Filed: October 1, 2019

## CONCURRING OPINION

This appeal requires statutory interpretation of legislative amendments related to Missouri's system of workers' compensation. I write separately to underscore the challenges of adhering to legislative intent in light of ambiguous or otherwise unclear language that has appeared in several legislative amendments to the workers' compensation statutes since 2005. The sole issue presented on appeal is whether Bruce Krysl ("Krysl") is entitled to recover partial permanent disability benefits from the Second Injury Fund ("the Fund") due to his work-related carpal tunnel syndrome. Our responsibility is to apply the law to the facts before us. Applying

the law in this matter requires our review of two sections of the same statute, which we hold allows Krysl to recover from the Fund. As this Court correctly notes, the two subsections at issue appear to be in conflict under the interpretation applied by the Labor and Industrial Relations Commission (the "Commission"). Section 287.220.2[6] generally provides that "[a]ll cases of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014, shall be compensated as provided in this subsection." Section 287.220.3 states that "[a]ll claims against [the Fund] for injuries occurring after January 1, 2014, and all claims against [the Fund] involving a subsequent compensable injury which is an occupational disease filed after January 1, 2014, shall be compensated as provided in this subsection." Section 287.220.3(1).

The Commission's interpretation of Section 287.220 focuses on the filing requirement of subsection 3. In so doing, the Commission suggests that the more specific requirement of subsection 3 supersedes the general language of subsection 2, and is therefore controlling. In particular, the Commission distinguishes the "triggering" event for Fund liability under each subsection—the *occurrence of an injury* under Section 287.220.2 and the *filing of a claim* for injuries resulting from an occupational disease under Section 287.220.3. At first glance, the Commission's argument seems logical. However, further analysis of these provisions undermines the Commission's application of Section 287.220 to deny Krysl's claim. By focusing solely on the triggering language of each subsection, the Commission overlooks what this Court does not—**that subsection 2 covers claims for all injuries** (including those resulting from occupation disease) occurring before January 1, 2014, while **subsection 3 limits coverage**

---

[6] All Section references are to RSMo (Cum. Supp. 2013), unless otherwise indicated.

**for claims of "subsequent compensable injuries"** resulting from an occupational disease filed after January 1, 2014.

Critically, the legislature did not define the term "subsequent compensable injury." Accordingly, we will give those words their plain meaning. The term "subsequent compensable injury" is different from a compensable disabling injury that was identified before January 1, 2014. In essence, a subsequent compensable injury is reasonably interpreted as a subset of a compensable injury—an injury from an occupational disease that did not become disabling until after January 1, 2014. This Court reasonably gives significance to the legislature's use of the word "subsequent." The dictionary defines "subsequent" as "following in time" and "coming or being later than something else." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2278 (2002). Here, the parties stipulated that Krysl developed a disabling injury resulting from an occupational disease before January 1, 2014. Because Krysl's disabling injury did not follow in time after January 1, 2014, his injury was not a "subsequent compensable injury." By recognizing the different meanings of these terms, we harmonize both subsections 2 and 3 of Section 287.220 and eliminate the false conflict suggested by the Commission. We consider the words in context and construe both subsections 2 and 3 of Section 287.220 *in pari materia* to determine the meaning and scope of the language. Cosby v. Treasurer of State as Custodian of Second Injury Fund, SC 97317, 2019 WL 2588575, at *3 (Mo. banc June 25, 2019) (citing S. Metro. Fire Prot. Dist. v. City of Lee's Summit, 278 S.W.3d 659, 666 (Mo. banc 2009)).

Our opinion also notes that applying the Commission's interpretation of Section 287.220 requires the addition of words not found in the text of the statute. Along that same line of reasoning, however, one can posit that under our interpretation of Section 287.220, the

3

legislature did not need to include in subsection 3 the condition based upon "filing."  Given our definition, any subsequent compensable injury would necessarily be filed after January 1, 2014, because the injury would not be disabling, and therefore not compensable, until after January 1, 2014.  I am mindful that when interpreting statutes, courts do not presume that the legislature enacts meaningless provisions.  Edwards v. Gerstein, 237 S.W.3d 580, 581 (Mo. banc 2007) (internal citation omitted).  For that reason, we are presented with a quandary as to the legislature's purpose in adding the filing condition.  This quandary is the reason I write this concurring opinion.  The language of Section 287.220 leaves this Court with a dilemma—which rule of statutory construction to follow.

In my view, our approach remains faithful to the legislature's intent to address the financial insolvency of the Fund in a manner consistent with the purpose of providing disability benefits under the Fund.  The purpose of Section 287.220.3 was to limit—not eliminate — Fund liability.  Contrary to the Commission's argument, allowing Krysl to recover from the Fund on his claim for his permanent partial disability does not disregard the legislature's intent as expressed in the plain language of the statute and does not lead to an absurd result rendering the amendments useless.  As noted in the opinion, our interpretation of "subsequent compensable injury" will have minimal impact on Fund liability because this interpretation only applies to a narrow subset of potential claimants who sustained a compensable injury due to an occupational disease prior to January 1, 2014, but who did not file a claim until after January 1 2014.  As a result, our interpretation aligns with the legislature's intent to rescue the Fund from its financial instability.

For these reasons, I concur.

4

Kurt S. Odenwald, Judge

5