SUPREME COURT OF MISSOURI
 en banc

TREASURER OF THE STATE OF ) Opinion issued April 20, 2021
MISSOURI AS CUSTODIAN OF THE )
SECOND INJURY FUND, )
 )
 Appellant, )
 )
v. ) No. SC98704
 )
JONATHAN PARKER, )
 )
 Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

 The Second Injury Fund (the “Fund”) appeals the decision of the Labor and

Industrial Relations Commission (the “Commission”) awarding permanent total disability

(“PTD”) benefits to Jonathan Parker under section 287.220.2. 1 Because Mr. Parker’s

injuries occurred after January 1, 2014, all parties agree the Commission erred in

applying subsection 2 of section 287.220 rather than subsection 3 of that statute. The

Fund argues this Court should deny Mr. Parker benefits under subsection 3, and

Mr. Parker argues this Court should award him benefits under subsection 3. This Court

has jurisdiction pursuant to article V, section 10 of the Missouri Constitution. Because

1
 All statutory references are to RSMo 2016, unless otherwise indicated.
article V, section 18 of the Missouri Constitution permits this Court to review only the

decisions and findings of the Commission, not to make such decisions in the first

instance, this Court vacates the Commission’s award of PTD benefits to Mr. Parker and

remands the case to the Commission to determine whether Mr. Parker is entitled to

benefits under subsection 3.

 Background 2

 From 2004 to 2015, Mr. Parker worked as a tree-trimmer for Asplundh.

Mr. Parker suffered a work-related injury to his right elbow and shoulder in March 2014.

In June 2014, Mr. Parker suffered another work-related injury to his neck.

Dr. Stechschulte performed surgery on Mr. Parker’s right arm in August 2014.

Following this surgery, Mr. Parker continued to work for Asplundh, but he did not return

to his position as a tree-trimmer, instead performing only light-duty work. In September

2015, Dr. Adrian Jackson performed a cervical discectomy and fusion surgery on

Mr. Parker. He did not return to work for Asplundh following this surgery. Mr. Parker

asked to return to work at Asplundh in a capacity that did not involve tree climbing, but

he never heard back from Asplundh. In June 2016, Mr. Parker attempted to work at

Dollar Tree stocking shelves, but quit after a few weeks due to pain from his injuries.

 Mr. Parker filed claims against the Fund for his March 2014 injury and his June

2014 injury. After he dismissed his claim for the March 2014 injury, Mr. Parker

2
 Because this Court is remanding for the Commission to perform its fact-finding and
law-applying role, this statement of facts is provided merely for context. It comes from
the parties’ briefs and is limited to the portions in which they agree. This Court is not
finding facts nor confirming (let alone rejecting) facts found by the Commission.

 2
proceeded to a hearing on his June 2014 injury. At the hearing, Mr. Parker offered a

medical report authored by Dr. James Stuckmeyer. Attached to Dr. Stuckmeyer’s report

were medical records that Dr. Stuckmeyer reviewed but did not prepare. The Fund did

not object to the admission of Dr. Stuckmeyer’s complete medical report, but the Fund

objected to the admission of the records attached to the report. The administrative law

judge (“ALJ”) overruled the Fund’s objection. Ultimately, the ALJ found the Fund liable

for PTD benefits under section 287.220.2. The Commission adopted the award of the

ALJ (as supplemented and corrected) in its “Final Award Allowing Compensation.”

 Analysis

 This Court reviews the Commission’s findings to determine if they are “supported

by competent and substantial evidence upon the whole record,” but questions of statutory

interpretation are questions of law reviewed de novo. Cosby v. Treasurer of State, 579

S.W.3d 202, 205-06 (Mo. banc 2019) (quotation marks omitted). “When interpreting

statutes, this Court must ascertain the intent of the legislature by considering the plain

and ordinary meaning of the terms and give effect to that intent if possible.” Id. at 206

(alteration and quotation marks omitted). Further, this Court refrains from adding words

to the statute. Macon Cnty. Emergency Servs. Bd. v. Macon Cnty. Comm’n, 485 S.W.3d

353, 355 (Mo. banc 2016).

 3
I. Statutory Construction 3

 In 2013, the legislature amended section 287.220 to limit the number of workers

eligible for fund benefits because the Fund was insolvent. Cosby, 579 S.W.3d at 205.

The legislature created subsection 2 of section 287.220 for compensable work injuries

occurring before January 1, 2014, and subsection 3 for compensable work injuries

occurring after January 1, 2014. Id. at 207-08. Although the legislature retained the pre-

amendment framework for fund benefits in subsection 2, it eliminated claims for

permanent partial disability (“PPD”) under subsection 3. Further, the legislature limited

the Fund’s liability for PTD claims under subsection 3.

 Under subsection 3, employees now must meet two conditions to make a

compensable PTD claim. First, the employee must have at least one qualifying

preexisting disability. § 287.220.3(2)(a). To qualify under the first condition, the

preexisting disability must be medically documented, equal at least 50 weeks of

permanent partial disability, and meet one of the following criteria:

 (i) A direct result of active military duty in any branch of the United States Armed
 Forces; or
 (ii) A direct result of a compensable injury as defined in section 287.020; or
 (iii) Not a compensable injury, but such preexisting disability directly and
 significantly aggravates or accelerates the subsequent work-related injury and
 shall not include unrelated preexisting injuries or conditions that do not aggravate
 or accelerate the subsequent work-related injury; or
 (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in
 one eye, or loss of hearing in one ear, when there is a subsequent compensable

3
 Even though this case must be remanded for the Commission to find the facts and
apply section 287.220.3 in the first instance, several questions of statutory construction
are certain to arise before the Commission. Because these issues have been fully briefed
and argued in this Court, and in the interest of avoiding unnecessary litigation and delay,
the Court will address them here.

 4
 work-related injury as set forth in subparagraph b of the opposite extremity, loss of
 eyesight in the other eye, or loss of hearing in the other ear[.]

§ 287.220.3(2)(a)(i)-(iv). Second, the employee must show he “thereafter sustains a

subsequent compensable work-related injury that, when combined with the preexisting

disability … results in a permanent total disability ….” § 287.220.3(2)(b). The

“subsequent compensable work-related injury” is often referred to as the “primary

injury.”

 The Fund argues the first condition can be met only when the preexisting

disability is determined to have reached maximum medical improvement (“MMI”) before

the employee suffered his primary injury. The Fund reasons that section 287.220.3(2)(a)

requires the employee’s preexisting disability equal a minimum of 50 weeks of PPD.

The Fund further contends PPD cannot be calculated before the injury reaches MMI. The

Fund concludes an employee whose preexisting disability has not been determined to

reach MMI before he suffered his primary injury did not have a preexisting disability

equaling 50 weeks of PPD.

 Section 287.220.3(2)(a), however, requires only that “[a]n employee has a

medically documented preexisting disability equaling a minimum of fifty weeks of

[PPD]” before suffering the primary injury. [Emphasis added.] That the employee’s

disability was determined to reach MMI after he suffered his primary injury does not

mean the employee suffered his preexisting disability after he suffered his primary injury.

The statute does not require the employee know his injury equals a minimum of 50 weeks

of PPD before suffering the injury or that PPD already be established in proceedings

 5
before the Commission. Accepting the Fund’s reading of section 287.220.3(2)(a) would

require this Court to add words to the statute. Therefore, an employee who suffers a

preexisting disability before his primary injury can meet the first condition regardless of

whether he knew (or it had been determined) before suffering his primary injury that his

preexisting disability equaled 50 weeks PPD.

 To meet the second condition, the Fund argues only one preexisting disability can

combine with the primary injury to result in PTD. Again, this Court disagrees. Although

section 287.220.3(2)(b) refers to the preexisting disability in the singular form – “when

combined with the preexisting disability” – section 1.030 instructs that the singular form

should be interpreted to include the plural form. 4 (Emphasis added.) Therefore, section

287.220.3(2)(b) should be read to include “when combined with the preexisting

disabilities.”

 Mr. Parker argues the second condition can be met by showing the primary injury

resulted in PTD when combined with all of the employee’s disabilities (regardless of

whether those disabilities meet the first condition). This argument also fails. Section

287.220.3(2)(b) specifies that the subsequent work-related injury must combine “with the

preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this

paragraph.” (Emphasis added.) By specifying that the preexisting disability must

qualify under one of the four eligibility criteria in the first condition, the legislature

4
 Although this Court held in Treasurer v. Witte, 414 S.W.3d 455, 463-64 (Mo. banc
2013), that claimants could not stack multiple disabilities to meet the threshold for fund
liability, Witte predates the 2013 amendments and, therefore, no longer applies.

 6
excluded disabilities that are not the primary injury and that do not qualify under the first

condition from being considered when determining if the claimant meets the second

condition. Therefore, an employee satisfies the second condition by showing the primary

injury results in PTD when combined with all preexisting disabilities that qualify under

one of the four eligibility criteria listed in the first condition.

 Mr. Parker argues that only considering qualifying preexisting disabilities when

determining if a claimant meets the second condition would render some claimants “too

qualified,” but that is not the case. The existence of non-qualifying disabilities does not

count against (or for) the claimant in evaluating whether he meets the second threshold

condition. In other words, two claimants with identical qualifying preexisting disabilities

and primary injuries should be evaluated the same way when determining if they meet the

second condition regardless of whether one has additional non-qualifying disabilities.

II. Award in the Present Case

 In this case, the Commission concluded Mr. Parker was PTD and the Fund was

liable. The Fund asks this Court to reject those findings and conclusions as unsupported

by competent and substantial evidence on the record as a whole. This Court cannot do

that because – as both parties concede to this Court – the Commission mistakenly applied

subsection 2 rather than subsection 3, which controls here given that the primary injury

occurred after January 1, 2014. In essence, the Fund wants this Court to reject (and Mr.

Parker wants this Court to affirm) the findings and conclusions they believe the

Commission would have made had it applied the proper subsection. This, the Court

cannot do.

 7
 Under article V, section 18 of the Missouri Constitution, this Court is only to

review the findings and decisions made by the Commission. This role is an important

one (as evidenced by its express inclusion in the constitution), but it is a limited one.

This Court cannot make these findings or conclusions in the first instance nor ascribe to

the Commission findings and conclusions all parties concede it did not make. It is for the

Commission – and only the Commission – to apply the statutory scheme as construed

above to the facts it finds in the present case and, then, to make or deny an award based

on those findings and conclusions, including (if the Commission concludes it is proper) a

determination that the Fund is liable and, if so, in what amount. When this process is

completed, either party may seek judicial review as in any other case.

III. Evidentiary Issue

 Because the Commission, on remand, must find the facts relevant to an analysis

under section 287.220.3 on the record already made before the ALJ, this Court addresses

the parties’ dispute concerning the admissibility of the materials on which Dr. James

Stuckmeyer relied in preparing his report and that were attached to the notice of his

report. Section 287.210.7 provides, “The testimony of a treating or examining physician

may be submitted in evidence on the issues in controversy by a complete medical report

and shall be admissible without other foundational evidence ….” To be a complete

medical report, the physician’s report must contain “the physician’s qualifications and the

patient’s history, complaints, details of the findings of any and all laboratory, X-ray and

all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an

estimate of the percentage of permanent partial disability, if any.” § 287.210.5. Further,

 8
“[a]n element or elements of a complete medical report may be met by the physician’s

records.” Id.

 The party submitting a complete medical report must also give notice of its intent

to submit a complete medical report at least 60 days before the hearing. § 287.210.7.

The notice must include “a copy of the report and all the clinical and treatment records of

the physician including copies of all records and reports received by the physician from

other health care providers.” § 287.210.7.

 Prior to the hearing, Mr. Parker timely gave notice of his intent to submit

Dr. Stuckmeyer’s report as a complete medical report. The notice contained medical

records upon which Dr. Stuckmeyer relied in creating his medical report, including a

report by Dr. Harold Hess. At the hearing, Mr. Parker submitted into evidence

Dr. Stuckmeyer’s complete medical report and the notice he gave to the Fund with the

records relied upon by Dr. Stuckmeyer attached. The Fund did not object to the

admission of Dr. Stuckmeyer’s report because it was properly introduced as a complete

medical report. The Fund, however, objected to the admission of the records attached to

the notice Mr. Parker had given the Fund. The Fund specifically argues the Commission

erred in admitting Dr. Hess’ report, which was attached to the notice.

 Materials are not admissible simply because they are attached to the notice.

Section 287.210.7 provides that the complete medical report is admissible without further

evidence or foundation, but it does not make a similar provision for the notice. The

purpose of the notice is to help the other party evaluate the complete medical report.

 9
Accordingly, the notice was not admissible under section 287.210.7, and Dr. Hess’ report

was not admissible under that provision simply because it was attached to the notice.

 Nevertheless, it appears Dr. Hess’ report was a part of Dr. Stuckmeyer’s complete

medical report. Section 287.210.5 provides that a complete medical report must include a

patient’s history and that “elements of a complete medical report may be met by the

physician’s records.” Because the entirety of the complete medical report is admissible,

Dr. Hess’ report was admissible as a part of it.

 Even if this were not so, any error in admitting Dr. Hess’ report could not have

been prejudicial for the reason that Dr. Stuckmeyer’s report – to which the Fund made no

objection – included the findings from Dr. Hess’ report. For example, Dr. Hess found

Mr. Parker had cervical spinal cord compression and recommended an “anterior cervical

discectomy and fusion at C3-C4.” Dr. Stuckmeyer’s report related Dr. Hess’ diagnosis

and explained that Dr. Jackson performed the anterior cervical discectomy and fusion

surgery on Mr. Parker after Dr. Hess’ recommendation. Dr. Hess opined that

Mr. Parker’s work as a foreman exacerbated his chronic neck pain. Dr. Stuckmeyer’s

report stated “in agreement with Dr. Hess, that as a direct, proximate, and prevailing

factor of” the nature of Mr. Parker’s employment with Asplundh, he developed chronic

neck pain. Dr. Hess also limited Mr. Parker to lifting 10 pounds before Mr. Parker

underwent his surgery. Mr. Dreilling, who testified as a vocational expert, mentioned

this pre-surgery limitation in his report, which was admitted as Exhibit C. It appears,

therefore the material portions of Dr. Hess’ report were included within evidence to

which the Fund did not object. Accordingly, there is no reason why the Commission

 10
cannot consider this evidence on remand and, if believed, give it such weight as it deems

appropriate.

 Conclusion

 For the reasons set forth above, the Commission’s decision is vacated, and the

case is remanded to the Commission to evaluate Mr. Parker’s claim for PTD benefits

under section 287.220.3.

 _____________________________
 Paul C. Wilson, Judge

Draper, C.J., Russell, Powell,
Breckenridge and Fischer, JJ., concur.

 11