

## Missouri Court of Appeals
### Southern District
### Division One

GREGORY PHELPS,              )
                                   )
            Appellant,       )
                                   )
     vs.                     )   No. SD36998
                                   )
MISSOURI STATE TREASURER AS   )   FILED: June 25, 2021
CUSTODIAN OF THE SECOND INJURY FUND, )
                                   )
          Respondent.     )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Gregory Phelps (hereafter referred to as "Claimant" and sometimes "Employee") appeals the final award of the Labor and Industrial Relations Commission (the "Commission") denying his workers' compensation claim for permanent total disability ("PTD") benefits from the Treasurer of the State of Missouri as custodian of the Second Injury Fund (the "Fund"). In three points relied on, Claimant asserts that the Commission "erred as a matter of law" in denying his claim because the Commission incorrectly interpreted and applied section 287.220.3.[1] Because his first and second points lack merit and their denial moots his third point, we affirm the Commission's award.

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

## Applicable Legal Principles

When, as in this case, "the Commission affirms and adopts the award and decision of the [Administrative Law Judge ("ALJ")], we review the ALJ's findings as adopted by the Commission."[2] ***Williams v. City of Jennings***, 605 S.W.3d 152, 157 n.2 (Mo.App. 2020) (citing ***Angus v. Second Injury Fund***, 328 S.W.3d 294, 297 (Mo.App. 2010). By their adoption, the ALJ's findings become the Commission's findings, which are subject to appellate review.

> This Court reviews the Commission's findings to determine if they are "supported by competent and substantial evidence upon the whole record," but questions of statutory interpretation are questions of law reviewed *de novo. Cosby v. Treasurer of State*, 579 S.W.3d 202, 205-06 (Mo. banc 2019).... "When interpreting statutes, this Court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Id.* at 206.... Further, this Court refrains from adding words to the statute. *Macon Cnty. Emergency Servs. Bd. v. Macon Cnty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016).

***Treasurer of State v. Parker***, SC98704, 2021 WL 1554726, at \*2 (Mo. banc Apr. 20, 2021).

The Commission's findings of fact are conclusive if supported by competent and substantial evidence upon the whole record and reached in the absence of fraud. ***Archer v. City of Cameron***, 460 S.W.3d 370, 374 (Mo.App. 2015) (citing ***Coday v. Division of Employment Sec.,*** 423 S.W.3d 775, 778 (Mo. banc 2014)). Here, none of Claimant's points challenge any Commission factual finding as not being supported by competent and substantial evidence upon the whole record. *See* Mo. Const. art V, § 18; section 287.495.1(4). We utilize, therefore, the Commission's unchallenged factual findings in our de novo review of Claimant's legal challenges to the Commission's interpretation and application of section 287.220.3.

---

[2] Upon Claimant's application for review, the Commission issued a supplemental opinion that affirmed and adopted the ALJ's award and decision denying compensation and that also noted, "[a]lthough not the basis for this award," there was an additional basis, not mentioned in the ALJ's decision, for denying the claim.

"This Court strictly construes the provisions of workers' compensations statutes." ***Cosby***, 579 S.W.3d at 206; section 287.800.1. "When interpreting statutes, this Court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." ***Cosby***, 579 S.W.3d at 206 (alteration and quotation marks omitted). While in isolation a word may be susceptible to more than one meaning, "its plain meaning is determined from its 'usage in the context of the entire statute.'" ***Holmes v. Steelman***, SC97983, 2021 WL 2445785, at \*5 (Mo. banc June 15, 2021) (quoting ***State ex rel. Goldsworthy v. Kanatzar***, 543 S.W.3d 582, 585 (Mo. banc 2018)). "A court cannot look at single, separate words in a statute and then apply to each a definition untethered from its context." ***Id.*** (citing ***Kehlenbrink v. Dir. of Revenue***, 577 S.W.3d 798, 800 (Mo. banc 2019)). "Strict construction does not authorize an ALJ, the Commission, or this court to add words to or subtract words from a statute or ignore the plain meaning of the words chosen by the legislature." ***Naeter v. Treasurer of Missouri***, 576 S.W.3d 233, 237 (Mo.App. 2019) (citing ***Dickemann v. Costco Wholesale Corp.***, 550 S.W.3d 65, 68 n.5 (Mo. banc 2018)).

Under section 287.220.3, an employee must meet two conditions to make a compensable PTD claim against the Fund. ***Parker*** at \*2. The first condition, at issue in Claimant's first and second points, is that "the employee must have *at least* one qualifying preexisting disability." ***Id.***

> To qualify under the first condition, the preexisting disability must be medically documented [("the first requirement")], equal at least 50 weeks of permanent partial disability [("the second requirement")], *and* meet one of the following criteria [("the third requirement")]:
>
> (i) A direct result of active military duty in any branch of the United States Armed Forces [("the first criteria")]; *or*
>
> (ii) A direct result of a compensable injury as defined in section 287.020 [("the second criteria")]; *or*
>
> (iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and

3

shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury [("the third criteria")]; *or*

(iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear [("the fourth criteria")] [.]

*Id.* (emphasis added); section 287.220.3(2)(a)a(i)-(iv).

The second condition, at issue in Claimant's third point, is "the employee must show he 'thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability ... results in a permanent total disability....'" *Id.*; section 287.220.3(2)(a)b. "The 'subsequent compensable work-related injury' is often referred to as the 'primary injury.'" *Id.*

### Factual and Procedural Background

As his primary injury, the Commission found that Claimant sustained a compensable work-related injury to his left shoulder on April 14, 2016, and that determination is not in dispute in this appeal. Claimant settled his worker's compensation claim for this injury with his employer and its insurer.

The Commission also determined that "[t]he evidence clearly supports a finding that [Claimant] is permanently and totally disabled…." That determination is not in dispute in this appeal.

Rather, Claimant asserted before the ALJ and the Commission that the Fund was liable for PTD benefits because his pulmonary system/lungs, right knee, and low back were each a qualifying preexisting disability, *see* section 287.220.3(2)(a)a ("the first condition"), that when combined with his primary injury resulted in his PTD, *see* section 287.220.3(2)(a)b ("the second

4

condition"). As to those alleged preexisting disabilities, the ALJ made the following factual findings:

[Pulmonary system/lungs]

Employee was diagnosed with asthma as a child. He has taken steroid medications and breathing treatments for the condition, but he does not believe his asthma limited his activities. Employee is a smoker and began smoking at age 13.

While working for the Fire Department, Employee sustained several smoke and chemical inhalation injuries that he believes worsened his asthma and increased his need for medications and inhalers. Employee did not provide specific dates for these exposures. He recalled having breathing treatments at least three to four times. He did not file any claims for workers' compensation regarding these exposures and there are no reports of injury on file with the Division of Workers' Compensation.

On March 9, 2000, Employee suffered a chemical exposure while working for the Malden Housing Authority. He was running a spray rig using herbicides when the line broke and sprayed him. He inhaled the herbicide and suffered a reaction. A report of injury was filed with the Division of Workers' Compensation. He testified that he went to the hospital and was given steroid shots. He testified that he was diagnosed with chemical burn in his lungs. He testified he was also diagnosed with COPD, although it is unclear when this diagnosis was made. He testified that workers' compensation paid for his "initial treatment." A Receipt and Notice of Termination of Compensation Payments filed on behalf of the Housing Authority of the City of Malden on July 13, 2000, reflects that Employee was paid 3 [and] 2/7 weeks of temporary total disability benefits and stated that the nature of the disability was "CHEMICAL BURN." The notice reflected that benefits were terminated on July 5, 2000, because Employee had returned to work but that Employee was still treating for the injury. Employee testified that he continued to work as long as he could, but was unable to get the job done and believed his employer wanted him to leave so he finally quit. After that he was off of work for about a year. He did not receive a workers' compensation settlement and did not understand that he could pursue a settlement.

Employee retired from the Fire Department after his chemical exposure because of his health. He could no longer wear an air mask or perform his job duties. His breathing improved, but he did not fully recover. He continues to use medications (Symbicort and two different inhalers) on a regular basis.

***

5

<u>Right knee</u>
In approximately 1976, Employee sustained a non-work-related injury to his right knee. He had some torn cartilage that was removed surgically. After completing treatment, his right knee was weaker and caused him problems "now and then."

Employee testified that he re-injured his right knee in approximately 1998 while working at the scene of a motor vehicle accident for the Malden Fire Department when his right foot got stuck in the mud in a ditch. There is no record of a report of injury or a claim for compensation being filed with the Division of Workers' Compensation regarding this accident. Employee was evaluated by Dr. Michael Trueblood for complaints of locking and catching in his right knee and the mechanism of injury was listed as "truck off in ditch in the mud-while in the ditch knee deep in-the knee popped; swelling." Dr. Michael Trueblood diagnosed a medial meniscus tear and performed arthroscopic right medial meniscectomy on February 24, 1998. Employee's right knee was weaker after this surgery. As a result of this injury, he used his left leg more when working on his hands and knees. It took him longer to perform his handyman jobs, and he declined to perform some jobs that required crawling on his hands/knees. Instead, he referred those jobs to his sons, who worked for him. When he went to work for the Malden Housing Authority, his right knee continued to slow him down. His right knee slowed him down at subsequent jobs and he found it hard to get down on his knees when working on the school buses. He had problems standing on a ladder, developed a limp, and avoided steps. If he does use stairs, he has to walk one step at a time.

On September 23, 2009, while working for Gideon School District, Employee reinjured his right knee while working on a ladder. The ladder slipped, causing him to lose his footing, and he twisted his knee. The injury was accepted as compensable and his employer provided benefits. He was referred to Dr. Milne who diagnosed a right knee medial meniscus tear and chondromalacia and performed a right knee partial medial meniscectomy with chondroplasty. He was released at [maximum medical improvement ("MMI")] on March 23, 2010, and Dr. Milne assigned a rating of 4% permanent partial disability attributable to his work injury and 0% permanent partial disability attributable to his preexisting condition. Employee testified that the surgery alleviated his pain but his knee became weaker. After this surgery, he could hardly get down on his right knee at all. Employee settled his claim for workers' compensation against Employer for 15% of the right leg.

<u>[Low Back]</u>
In approximately 2007, Employee injured his back while working for Risco School District. He was moving a file cabinet with a dolly when it tipped and he hurt his low back while trying to catch it. A report of injury was filed with the Division of Workers' Compensation. Employee's medical records are not part of this record; however, he testified he was evaluated by Dr. Kee Park, who recommended a fusion. He sought a second opinion with Dr. Tolentino and he agreed with Dr. Park. The workers' compensation insurer sent him for a third

opinion and he underwent injections. He had approximately six weeks of therapy. He testified that workers' compensation paid for this treatment. After he was released from treatment, he no longer did any heavy lifting and experienced numbness in his thighs and the tops of his legs, right worse than left. He continued to work but could no longer weed eat or mop. His back tightened up with sitting and standing and he had to alternate positions every 15-20 minutes. Muscle spasms made it harder to work. He had an achy pain all the time. His pain was worse with lifting or repetitive motion. He did not receive a settlement.

Employee reinjured his back on January 22, 2015, while unloading a truck while working for Gideon School District. He was diagnosed by Dr. James Coyle with an acute lumbar strain superimposed on degenerative disc disease with annular tears at L4-5 and L5-S1 Dr. Coyle opined his work accident was the prevailing factor in causing his condition. He further opined Employee was not a surgical candidate and recommended conservative care. Employee underwent physical therapy, an epidural steroid injection and a trigger point injection. He was released at MMI by Dr. Andrew Wayne on April 7, 2015. Dr. Wayne assigned a rating of 2% permanent partial disability of the whole person attributable to the January 22, 2015[,] work accident. He opined that none of that disability was attributable to his preexisting condition. Employee settled his claim with Employer-Insurer for 11.4% body as a whole, referable to his low back. His low back symptoms remained about the same except the numbness in his leg happened more frequently after this accident.

As to Claimant's pulmonary system/lungs, right knee, and low back conditions, the ALJ

found and determined as follows:

[Pulmonary system/lungs]

Although Employee testified and a report of injury confirms that he sustained a chemical exposure at work in 2000, I find Employee did not meet his burden of proof that he sustained compensable injury as defined in section 287.020. Pursuant to the version of Section 287.020 in effect in 2002[footnote omitted], Employee had the burden to prove that work was "a substantial factor" in causing "the resulting medical condition or disability." Dr. Volarich provided an opinion that Employee had a 30% disability to his pulmonary system due to asthma, COPD, and sleep apnea, but he did not address whether the chemical exposure at work was a substantial factor in causing those conditions and the resultant disability. I find there is insufficient evidence in the record to meet Employee's burden of proof. I further find Employee did not meet his burden of proof that his multiple smoke and chemical exposures while working for Malden Fire Department resulted in compensable injuries.

[Right knee]

I find that Employee's 1976 right knee injury was a non-work-related injury and therefore does not meet the requirements of Section 287.020.3 RSMo.

Although Employee testified that he injured his right knee at work in approximately 1998, the evidence is insufficient to support a finding that the 1998 accident was a substantial factor in causing Employee's right knee condition or any of Dr. Volarich's assigned disability rating of 50% of the knee. There is no record of a treating doctor or medical expert addressing medical causation as it pertains to this accident. I find Employee did not meet his burden of proof that this was a compensable injury as defined in the version of section 287.020 in effect at the time of injury.

I find, based on the testimony, medical evidence, and Employee's prior stipulation for compromise settlement, Employee has a medically documented preexisting disability of 15% of his right knee (24 weeks) that was a direct result of a compensable injury (on 9/23/2009) as defined in section 287.020. This disability does not satisfy the requirements of Section 287.020.3(2)(a)a [sic] because the disability equals less than fifty weeks of compensation.

[Low back]

Although Employee testified and a report of injury confirms that he sustained an injury to his lumbar spine at work in 2007, the evidence is insufficient to support a finding that the 2007 accident was the prevailing factor in causing Employee's back condition or any of Dr. Volarich's assigned rating of 25% of the body as a whole. There is no record of a treating doctor or medical expert addressing medical causation as it pertains to this accident. I find Employee did not meet his burden of proof that he sustained a compensable injury as defined in section 287.020.

I find, based on the testimony, medical evidence, and Employee's prior stipulation for settlement, that Employee has a medically documented preexisting disability of 11 .4% of the body as whole referable to the lumbar spine (45.6 weeks) that was a direct result of a compensable injury (on 1/22/2015) as defined in section 287.020. This disability does not satisfy the requirements of Section 287.020.3(2)(a)a [sic] because the disability equals less than fifty weeks of compensation.

In the absence of a qualifying preexisting disability satisfying the first condition—section 287.220.3(2)(a)a, the ALJ entered an award denying Claimant PTD benefits from the Fund.

Upon Claimant's application for review, the Commission issued a supplemental opinion that affirmed and adopted the ALJ's decision and award denying compensation and that included the following paragraph:

Although not the basis of this award, we note that employee also failed to demonstrate that a single qualifying preexisting disability, exclusive of any other preexisting disabilities, combined with disability from his primary injury to result

8

in permanent total disability. Employee's contention that *Treasurer of Missouri as Custodian of the Second Injury Fund v. Parker*, (WD83030, July 14, 2020) controls this issue is incorrect. On September 4, 2020, pursuant to Rule 83.02, the Western District Court of Appeals transferred its opinion in this case to the Supreme Court. In addition, the Eastern District Court of Appeals, in *Sterling Bennett v. Treasurer of the State of Missouri, as Custodian of the Second Injury Fund* (ED108713, August 25, 2020), specifically endorsed the Commission's denial of Second Injury Fund liability pursuant to § 287.220.3(2) where the employee failed to present a total disability opinion that considered only the combination of his primary injury and a single preexisting right shoulder injury.

This appeal timely followed.

## Discussion

In three points relied on, Claimant asserts four claims of legal error by the Commission in making its award denying him PTD benefits from the Fund: two claims, included in his first and second points, that the Commission misinterpreted and misapplied section 287.220.3(2)(a)a(ii)—the second criteria; one claim, included in his first point, that the Commission misapplied section 287.220.3(2)(a)a(iv)—the fourth criteria; and one claim, in his third point, that the Commission misinterpreted and misapplied section 287.220.3(2)(a)b—the second condition. For ease of analysis, we will group and address these claims in their statutory order by considering Claimant's first two points in reverse order and bifurcating his first point by its two claims.

### Commission did not Increase Claimant's Burden to Prove the Second Criteria—Section 287.220.3(2)(a)a(ii)

In his second point, Claimant argues that the Commission erred in finding that none of Claimant's preexisting disabilities to his pulmonary system/lungs, right knee, or low back met the criteria under the first condition—section 287.220.3(2)(a)a—in that "the Commission increased Employee's burden of proof by *requiring* a preexisting 'compensable injury' as found in §287.220.3(2)(a)[a](ii) [(the second criteria)] to be one in which the Employee both filed a claim and received an award of permanent partial disability to be considered a 'compensable injury'." (Emphasis added.) Claimant is incorrect.

9

The existence, nature and extent of employee's preexisting disabilities were contested issues before the Commission. Claimant bore the burden of proof on these issues. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012) (the workers' compensation claimant bears the burden of proof to show that the claimant's injury was compensable in workers' compensation). This overall burden of proof consists of two separate burdens—the burden of production and the burden of persuasion. *Annayeva v. SAB of TSD of City of St. Louis,* 597 S.W.3d 196, 200 n.8 (Mo. banc 2020) (citing *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)).

In a workers' compensation case, a claimant meets his or her burden of production when the claimant introduces competent and substantial evidence on the whole record sufficient to support a finding on each of the facts necessary to that award. *Annayeva*, 597 S.W.3d at 200 n.8. Conversely, the Fund has no burden to produce contrary evidence. *Seifner v. Treasurer of State-Custodian of Second Injury Fund*, 362 S.W.3d 59, 66 (Mo.App. 2012).

"The burden of persuasion, on the other hand, requires the [claimant] actually 'to convince the fact-finder to view the facts in a way that favors [the claimant].'" *Annayeva*, 597 S.W.3d at 200 n.8 (quoting *Krispy Kreme Doughnut Corp.*, 488 S.W.3d at 67).

In determining if Claimant had at least one qualifying preexisting disability as a direct result of a compensatory injury under section 287.220.3(2)(a)a(ii)—the second criteria, the Commission considered and weighed, along with other evidence, whether Claimant had filed a workers' compensation claim or received an award for Claimant's prior injuries that he asserted resulted in a work-related disability. Such evidence is relevant, even though not necessarily conclusive, as to whether a particular preexisting disability was a direct result of a compensable injury as defined in section 287.020 and, if so, as to the nature and extent of the resulting

disability. Claimant does not challenge the relevance of this evidence or the Commission's consideration of it.

Rather, Claimant asserts that the Commission *required* him, in order to satisfy his burden of production, to introduce into evidence a workers' compensation claim and an award to prove a compensatory injury under section 287.220.3(2)(a)a(ii)—the second criteria. Claimant supports his assertion only by noting the correlation between his preexisting disabilities in which the Commission found were a direct result of a compensable injury as those wherein he filed a claim and received an award and Claimant's alleged work-related disabilities in which the Commission did not find were a direct result of a compensable injury as those wherein he did not file a claim or receive an award. While the record reflects its accuracy, this correlation does nothing more, however, than support that the filing of a claim and the receipt of an award was a fact considered by the Commission, which, as discussed in the preceding paragraph, is not challenged by Claimant. This is so because the Commission considered and weighed the totality of evidence presented as to each alleged injury and disability in making its findings as to whether Claimant met his burden of persuasion and this universe of evidence was larger than the single binary fact of whether Claimant had filed a claim and received an award for a particular injury. Nothing in the Commission's findings or in the record supports that the Commission imposed the asserted requirement upon Claimant's burden of production. Claimant's second point is denied.[3]

---

[3] Claimant raises other issues in his argument under this point that are not included in his point relied on. Because these issues are not presented for appellate review, they are not addressed. "[I]ssues to which an appellant alludes only in the argument portion of appellant's brief are not presented for review." **Fifth Third Bank v. Brady**, 581 S.W.3d 130, 132 n.3 (Mo.App. 2019) (quoting **In re Marriage of Flud**, 926 S.W.2d 201, 206 (Mo.App. 1996)).

***Under the Second Criteria—Section 287.220.3(2)(a)a(ii)—a Preexisting Disability must be a Direct Result of a Compensable Injury as Defined in Section 287.020 to qualify under the First Condition***

In his first claim in his first point, Claimant contends that the Commission erred in denying his claim for PTD benefits because it misinterpreted and misapplied section 287.220.3(2)(a)a(ii)—the second criteria—as to his pulmonary system/lungs, right knee and low back preexisting disabilities in that "the correct interpretation of §287.220.3(2)(a)[a] requires determining the total weeks of permanent partial disability for each body part/area affected and not by separating recurrent injuries to the same body part/area by their particular injury and re-injury dates." We disagree because the premise of Claimant's interpretation—a sequential three-step analysis—is contrary to the qualifying preexisting disability analysis recently announced by our Supreme Court in *Parker*.

In his argument supporting this claim, Claimant asserts that his interpretation of section 287.220.3(2)(a)a(ii)—the second criteria, as contained within his first point, envisions a sequential three-step analysis. According to Claimant, step one of his analysis requires that he establish that he had a "medically documented preexisting disability" regardless of causation. His step two requires that he then establish that the medically documented preexisting disability, once again regardless of causation, equals a minimum of 50-weeks of permanent partial disability. And his final step three requires that he establish that the medically documented preexisting disability that equals a minimum of 50-weeks of permanent partial disability is "a direct result of a compensable injury as defined in section 287.020…." As to his third and final step, Claimant contends that if any part of such preexisting disability was caused by a compensable injury as defined in section 287.020, then the "total preexisting disability" would be a "direct result" of a compensable injury as defined in section 287.020 thereby satisfying the second criteria. Claimant, however, fails to direct us to any language in section 287.220.3(2)(a)a

12

that suggests, much less requires, such a sequential three-step analysis for the first condition. Moreover, Claimant's interpretation and analysis of the first condition—section 287.220.3(2)(a)a—is not consistent with the interpretation and analysis of that section as recently announced by the Supreme Court of Missouri.

As previously noted, our Supreme Court found in *Parker* that a qualifying preexisting disability under the first condition—section 287.220.3(2)(a)a—must satisfy three requirements: (1) be medically documented, (2) equal at least 50 weeks of permanent partial disability, *and* (3) meet one of the four listed criteria. *Parker*, SC98704, 2021 WL1554726, at *2; section 287.220.3(2)(a)a(i)-(iv). A preexisting disability must meet all three requirements in order to qualify and the failure to meet any one requirement disqualifies it. So, as relevant to our discussion of the second criteria—section 287.220.3(2)(a)a(ii), if a particular preexisting disability is not medically documented, equal to at least 50 weeks of permanent partial disability, or "[a] direct result of a compensable injury as defined in section 287.020" it is not a qualifying preexisting disability under the first condition—section 287.220.3(2)(a)a. *Id.*

Here, the Commission considered the nature and extent of all of Claimant's alleged preexisting disabilities and found that only two were a direct result of a compensable injury as defined in section 287.020: the disability resulting from his 2009 injury to his right knee and the disability resulting from his 2015 injury to his low back. The Commission concluded, therefore, that Claimant's other alleged preexisting disabilities resulting from other causes did not factually satisfy the second criteria. This conclusion, based upon the Commission's interpretation and application of section 287.220.3(2)(a)a(ii)—the second criteria, is consistent with the *Parker* interpretation and analysis of that section and, therefore, is not an error of law.

As for the two preexisting disabilities the Commission found satisfied the second criteria, the Commission further found that neither satisfied the second requirement—equals 50 weeks of permanent partial disability—under the first condition—section 287.220.3(2)(a)a. The Commission concluded, therefore, that Claimant's disabilities resulting from these injuries were not qualifying preexisting disabilities under the first condition. This conclusion, based upon the Commission's interpretation and application of the first condition—section 287.220.3(2)(a)a, is consistent with the *Parker* interpretation and analysis of that section and, therefore, is not an error of law.

Claimant's second criteria—section 287.220.3(2)(a)a(ii)—claim in his first point is denied.

### Under the Fourth Criteria—Section 287.220.3(2)(a)a(iv)—"the Opposite Extremity" Requirement for a Primary Injury is not Applicable

The Commission found that Claimant had no medically documented disability that fell under section 287.220.3(2)(a)a(iv)—the fourth criteria. In his first point, Claimant also claims that the Commission "erred as a matter of law" in interpreting and applying section 287.220.3(2)(a)a(iv) because his primary injury to his left shoulder was an injury to the opposite extremity of this right knee and its preexisting disability, as provided in the fourth criteria— section 287.220.3(2)(a)a(iv), in that "the correct interpretation of §287.220.3(2)(a)[a] requires determining the total weeks of permanent partial disability for each body part/area affected and not by separating recurrent injuries to the same body part/area by their particular injury and re-injury dates." We need not reach or address the latter ultimate issue asserted by Claimant, however, because the premise of this claim—the left shoulder is "the opposite extremity" of the right knee under the fourth criteria—is not correct.

14

The framework for our discussion of this fourth criteria claim, just as for the preceding second criteria claim, is informed by *Parker* and its interpretation and analysis of the first condition—section 287.220.3(2)(a)a. *See Parker*, SC28704, 2021 WL1554726, at *2. Thus, as applicable to disabilities and injuries to extremities of the body under the fourth criteria, if a particular preexisting disability is <u>not</u> (1) medically documented, (2) equal to at least 50 weeks of permanent partial disability, <u>or</u> (3) "[a] preexisting permanent partial disability of an extremity… when there is a subsequent compensable work-related injury [the primary injury] as set forth in subparagraph b of the opposite extremity…" it is not a qualifying preexisting disability under the first condition—section 287.220.3(2)(a)a. *Id.* The third requirement of the first condition cannot be satisfied under the fourth criteria unless there is (1) a preexisting permanent partial disability of an extremity *and* (2) the primary injury is to "the opposite extremity." *See* section 287.220.3(2)(a)a(iv).

Claimant argues that his "primary, compensable work-related injury … resulted in disability to his left shoulder which was an extremity of the body. The opposite of left is right. The preexisting disability to his right knee was to an extremity on the opposite side of the left shoulder." As a result, Claimant contends he has satisfied all the requirements under section 287.220.3(2)(a)a(iv)—the fourth criteria.

The Fund, while agreeing that both the left shoulder and the right knee are extremities, contends that the left shoulder is not "the opposite extremity" of the right knee as that phrase is used in section 287.220.3(2)(a)a(iv)—the fourth criteria. The Fund contends that the plain and ordinary meaning of "opposite" when coupled with "extremity" is best captured by the Merriam-Webster dictionary's definition of "opposite" as "being the other of a pair that are corresponding or complementary in position, function, or nature." MERRIAM-WEBSTER DICTIONARY,

15

https://www.merriam-webster.com/dictionary/opposite (last visited June 17, 2021). The Fund also contends "the use of the word 'the' suggests there is only one opposite extremity."

In his reply brief, Claimant responds to the Fund's contentions by stating that section 287.220.3(2)(a)a(iv)—the fourth criteria—"simply requires that the preexisting disability be to an extremity (such as an arm or leg) and that the primary or last work-related injury be to *an* opposite extremity which is on a completely different side of the claimant's body." (Emphasis added). He omits, however, any legal authority in his response that provides, under strict statutory construction, for the substitution of the word "an" for the word "the" as used in the phrase "the opposite extremity" as is provided in the fourth criteria—section 287.220.3(2)(a)a(iv). Indeed, we have no authority to subtract or add words to a statute. *Naeter*, 576 S.W.3d at 237. He also omits any response as to why the Fund's proffered dictionary definition for "opposite" does not reflect the plain and ordinary meaning of that word as used in the fourth criteria.

We find the Fund's argument persuasive. As used in the fourth criteria, "opposite" is an adjective that modifies the noun "extremity." Section 287.220.3(2)(a)a(iv). The plain meaning of "opposite" should be ascertained in that context. *Holmes*, SC97983, 2021 WL2445785, at *5. "Extremity" as used in the fourth criteria is referencing the body's four extremities: a pair of legs and a pair of arms. The Fund's proffered dictionary definition for "opposite" as "being the other of a pair that are corresponding or complementary in position, function, or nature" accurately reflects the plain meaning of "opposite" as it modifies the word "extremity" in the context of its use in the fourth criteria. Accordingly, giving the words in section 287.220.3(2)(a)a(iv)—the fourth criteria—their plain and ordinary meaning, "the opposite extremity" to a right leg is the left leg, not the left arm. Therefore, the fourth criteria—section

16

287.220.3(2)(a)a(iv)—does not apply to Claimant's primary injury to the shoulder of his left arm and the Commission did not commit any legal error in finding that Claimant had no medically documented disability that fell under the fourth criteria.

Claimant's fourth criteria—section 287.220.3(2)(a)a(iv)—claim in his first point is denied.

### Second Condition—Section 287.220.3(2)(a)b—Combination of Qualifying Preexisting Disability and Primary Injury Requirement is Moot

In his third point, Claimant asserts that the Commission "erred as a matter of law" by misapplying section 287.220.3(2)(a)b—the second condition—in its supplemental opinion discussion related to Claimant's failure "to demonstrate that a single qualifying preexisting disability, exclusive of any other preexisting disabilities, combined with disability from his primary injury to result in permanent total disability." This point, however, is moot because the second condition—section 287.220.3(2)(a)b—is not applicable unless and until the first condition for Fund liability under section 287.220.3(2)(a)a—the existence of at least one qualifying preexisting disability—is satisfied. *Parker*, SC98704, 2021 WL1554726, at \*2. Here, in denying Claimant's first and second points, we found no error in the Commission's finding that Claimant failed to prove the existence of at least one qualifying preexisting disability under the first condition—section 287.220.3(2)(a)a. Claimant's third point is denied.

### Decision

The Commission's award denying Claimant PTD benefits from the Fund is affirmed.

GARY W. LYNCH, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J./P.J. – CONCURS

DON E. BURRELL, J. – CONCURS